UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOY MACCHARULO et al.,

        Plaintiffs,

    -v-                                  No. 08 Civ. 301 (LTS)(THK)

GLENN GOULD et al.,

        Defendants.
------------------------------------------------------x

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

OPINION AND ORDER

In this action arising out of the alleged denial of proper mental health care to Plaintiffs' decedent Frank Kucharczyk ("Decedent"), a mentally ill person who was at all times relevant herein incarcerated in the New York State prison system, Plaintiffs Joy Maccharulo and Delores Kucharczyk ("Plaintiffs"), as Co-Administratrices of Decedent's estate, assert claims under 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 12131 ("ADA Title II"), and 29 U.S.C. § 794 ("Rehabilitation Act"). Plaintiffs' Amended Complaint names as defendants four New York State entities ("Entity Defendants")[1] and twenty-eight individuals ("Individual Defendants")[2] (collectively,

---

[1]    The Entity Defendants named in the Amended Complaint are: New York State Department of Correctional Services ("DOCS"); New York State Office of Mental Health ("OMH"); Central New York Psychiatric Center ("CNYPC"); and the State of New York.

[2]    The Individual Defendants named in the Amended Complaint are: Glenn Gould (sic) (according to Defendants, this individual's surname is Goord); he is referred to in this Opinion as Glenn Goord), Commissioner of DOCS; Michael Hogan, Commissioner of OMH; Donald Sawyer, Executive Director of CNYPC; William Mazzuca, Superintendent of Fishkill; John Burge, Superintendent of Auburn Correctional Facility; William E. Phillips, Superintendent of Green Haven Correctional Facility; Jeffrey Colella; Gary Hermann; Justin Thomas; Ronald Nelson; Thomas Miller ("Miller"); Dr. Mitchell Langbart; John Henderson; Nurse R. Smith; Fishkill Nurse

"Defendants").  The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1331.

Defendants[3] have moved to dismiss the complaint on a variety of grounds, pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court has considered thoroughly the parties'

submissions and, for the following reasons, Defendants' motion will be granted in its entirety.

Plaintiffs will be granted leave to replead their ADA Title II and Rehabilitation Act claims against the

Entity Defendants.

<u>BACKGROUND</u>

The following facts are alleged in the Amended Complaint and are taken as true for

purposes of this motion practice.  <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 189 (2d

Cir. 2007).  Decedent, at the time of his death in 2004, was a 44-year-old man who suffered from

paranoid schizophrenia.  On September 19, 2002, Decedent pleaded guilty to attempted robbery in

the second degree and assault in the second degree and was sentenced to a term of seven years of

incarceration by the Superior[4] Court of the State of New York, Westchester County.  On November

---

Homell or Howell; Fishkill Nurse 407; Fishkill Nurse B. Furrorn; Dr. R. Kami; Robert Rizzo; Dr. O. Klein; Correctional Officer J. Vito; Correctional Officer Churns; Correctional Officer LoPiccolo; Correctional Officer Croce; Correctional Officer Roberts; Correctional Officer T. Miller ("Correctional Officer Miller"); Fred Belanger; and Sara Muetzel.  Plaintiffs also list two groups of unnamed individual defendants: "As of Yet Unidentified Correctional Officers from Fishkill Correctional Facility" and "As of Yet Unidentified Medical Personnel from Fishkill and Green Haven Correctional Facilities."

[3] The Office of the Attorney General of the State of New York, which has brought the motion on Defendants' behalf, represents that Defendants Phillips, Fishkill Nurse Homell or Howell, Fishkill Nurse 407, Furrorn, Nelson, Lopiccolo, and Thomas have not been served, and the Court's docket does not include certificates of service as to any of those defendants.  The Amended Complaint will be dismissed without prejudice as against the unserved defendants.

[4] So in original.  The Court presumes that the sentence was imposed by the Supreme Court for Westchester County, as Plaintiffs allege that Decedent was sentenced by a Justice of the Supreme Court.  (Am. Compl. ¶¶ 37-38.)

25, 2002, Decedent was admitted to CNYPC for an OMH classification and service level designation, which would be relied upon to place him appropriately in the correctional system. The OMH classification system ranks each subject on a scale from one to five, with level-one subjects requiring the most intensive mental health treatment. CNYPC concluded that Decedent was "psychotic" and suffered from a serious mental illness, and assigned him an OMH classification of level two. He was transferred to Fishkill Correctional Center ("Fishkill"), a level-two facility, on January 21, 2003. At the time of his transfer, Decedent was "mentally stable."

Decedent's mental health deteriorated significantly during his five-month incarceration at Fishkill. The Fishkill staff was unable to treat Decedent's recurrent auditory hallucinations and paranoia. On June 11, 2003, the Fishkill staff downgraded Decedent's OMH level to level one and concluded that Decedent required more intensive mental health treatment. The staff reported that Fishkill was unable to provide Decedent with level-one treatment and approved his transfer to a level-one facility.

On June 27, 2003, Decedent was transferred to Auburn Correctional Center ("Auburn"). While receiving level-one treatment at Auburn, Decedent's mental health improved significantly. Decedent's OMH classification, however, remained at level one. On August 2, 2004, the Auburn staff nonetheless transferred Decedent back to Fishkill. During the seven-day transfer period from Auburn to Fishkill, Decedent's psychotropic medication was discontinued, causing him to experience auditory hallucinations, paranoia, restlessness, and insomnia. Although Decedent's psychotropic medication was reinstated on August 9, 2004, his mental health continued to deteriorate, leading to poor self-discipline and ultimately a mental breakdown on September 9, 2004. Decedent was transferred to Green Haven Correctional Center ("Green Haven"), a level-one facility, on October 15, 2004. Upon his arrival, Decedent collapsed and was transferred to St. Francis Hospital, where he died of an Olanzapine overdose.

Proceeding *pro se*, Plaintiffs commenced this action by filing a complaint (the "Original Complaint") on October 15, 2007, asserting that Defendants Glenn Goord, Michael Hogan, Donald Sawyer, Robert Rizzo, (collectively, "Original Defendants"), William Connelly,[5] and unidentified "John Doe" defendants violated the Decedent's rights under the Eighth and Fourteenth Amendments to the Constitution and are thus liable under 42 U.S.C. § 1983.[6]  Specifically, Plaintiffs alleged that while Decedent was incarcerated in DOCS, the named Defendants failed to treat Decedent's "serious psychologically debilitating medical condition," placed Decedent in solitary confinement despite his "severe mental illness," and "implemented a mental health system . . . wholly inadequate" to treat the mentally ill.  (Compl. ¶ III-C.)   The Court (Wood, C.J.) issued an order *sua sponte* on January 14, 2008  ("Jan. 14 Order"), directing Plaintiffs to amend the Complaint to address various specified insufficiencies.  (Jan. 14 Order, 5.)

On March 14, 2008, Plaintiffs, through counsel, filed an Amended Complaint, which named 28 additional defendants and included two groups of unnamed individual defendants.[7]   The Amended Complaint asserts a Section 1983 claim against various individual defendants, alleging that their deliberate indifference to Decedent's serious medical needs deprived him of his rights secured by the Eighth and Fourteenth Amendments.  (Am. Compl. ¶¶ 102-107.)  In addition, Plaintiffs'

---

[5]   Defendant William Connelly, who was named in the Original Complaint, is not named in the Amended Complaint.

[6]   Plaintiffs also asserted that Decedent was deprived of his right to due process secured by the Fifth and Fourteenth Amendments.  They have since abandoned that claim. (Pl.'s Opp. 12.)

[7]   The newly-added individuals who have been properly served are Mazzuca, Burge, Colella, Hermann, Miller, Dr. Langbart, Henderson, Smith, Dr. Kami, Dr. Klein, Vito, Churns, Croce, Roberts, Correctional Officer Miller, Belanger, Muetzel. "As of Yet Unidentified Correctional Officers" and "As of Yet Unidentified Medical Personnel" are named as well.  (Collectively, "Newly-Added Individual Defendants.")  The remaining new Defendants are entities:  DOCS, OMH, CNYPC, and the State of New York (collectively, "Entity Defendants").

Amended Complaint asserts for the first time claims against various individual defendants and the

Entity Defendants under Title II of the ADA and the Rehabilitation Act.  (Am. Compl. ¶¶ 97-100.)

<u>DISCUSSION</u>

I.   <u>Rule 12(b)(1) Motion</u>

_____The Eleventh Amendment to the Constitution of the United States provides

immunity against "any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State or by Citizens or Subjects of any Foreign State."  U.S. Const.

Amend. 11.  Thus, a suit against a state, one of its agencies, or one of its officials acting in his

official capacity is generally proscribed by the Eleventh Amendment.  <u>See</u> <u>Pennhurst State Sch. &</u>

<u>Hosp. v. Halderman</u>, 465 U.S. 89, 101-02 (1984).  While sovereign immunity may be waived by

the states, <u>see</u> <u>CSX Transp. Inc. v. New York State Office of Real Property Servs.</u>, 306 F.3d 87, 95

(2d Cir. 2002), or abrogated through an act of Congress pursuant to its authority under Section Five

of the Fourteenth Amendment, <u>see</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 518 (2004), the State of New

York has not waived its immunity from suit, <u>see</u> <u>Trotman v. Palisades Interstate Park Comm'n</u>, 557

F.2d 35, 38-40 (2d Cir. 1977), and Section 1983 does not abrogate a state's Eleventh Amendment

immunity, <u>see</u> <u>Dube v. State Univ. of New York</u>, 900 F.2d 587, 594 (2d Cir. 1990).  Therefore, to

the extent that Plaintiffs assert Section 1983 claims against New York State, its agencies, and/or its

employees in their official capacity, those claims are barred by the Eleventh Amendment.[8]

II.   <u>Rule 12(b)(6) Motion</u>

In deciding a motion to dismiss a complaint for failure to state a claim pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all factual

---

[8]      Section 1983 claims asserted against the Original Defendants in their official
capacities were dismissed by the January 14 Order as precluded by the Eleventh
Amendment.  (Jan. 14 Order, 4-5.)

statements alleged in the complaint and draw reasonable inferences in favor of the non-moving party."  McCarthy, 482 F.3d at 191 (internal citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.  This plausibility standard does not amount to a "probability requirement," but it calls for more than a "sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks and citation omitted).

III.   The Statute of Limitations

        A statute of limitations provides an affirmative defense.  See Fed. R. Civ. P. 8(c)(1). The Court may consider Defendants' statute of limitations defense at this juncture because "a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint."  Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) (internal quotation marks omitted).  In Section 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions."  Owens v. Okure, 488 U.S. 235, 250 (1989).  Claims asserted under Title II of the ADA and Section 504 of the Rehabilitation Act are also governed by the applicable state statute of limitations for personal injury actions.  See M.D. v. Southington Bd. of Educ., 334 F.3d 217, 221-22 (2d Cir. 2003) (Rehabilitation Act); Gardner v. Wansart, No. 05 Civ. 3351, 2006 WL 2742043, at *3 (S.D.N.Y. Sept. 26, 2006) (ADA Title II).  In New York, claims brought under Section 1983, ADA Title II, and the

Rehabilitation Act are governed by the three-year statute of limitations provided by Section 214(5) of the New York Civil Practice Law and Rules.[9]  See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (Section 1983); Gardner, 2006 WL 2742043, at *3 (Rehabilitation Act and ADA Title II).

It is clear from the face of the complaint that Plaintiffs' causes of action accrued, at the latest, on the date of Decedent's death, October 15, 2004.  Plaintiffs commenced this action on October 15, 2007, the last day within the limitations period, and amended their complaint four months thereafter, on March 14, 2008, to assert new causes of action and to bring in new parties. Defendants contend that Plaintiffs' ADA Title II and Rehabilitation Act claims against Defendants Goord, Hogan, and Sawyer are untimely because they were first asserted after the statute of limitations had expired.  Defendants further contend that all claims asserted against the Newly-Added Individual Defendants and Entity Defendants are time-barred.  Since it is undisputed that more than three years have passed between the accrual date and the date of the amendment, the claims against the new Defendants and the new claims against the Original Defendants are time-barred unless the amendment relates back to the date of the Original Complaint.  See Fed. R. Civ. P. 15(c).[10]

_____

[9]     Section 214 of the New York Civil Practice Law and Rules provides, in relevant part: "The following actions must be commenced within three years: . . . an action to recover damages for a personal injury except as otherwise provided in sections 214-b, 214-c and 215."  N.Y. C.P.L.R. § 214 (McKinney's 2003).

[10]    Rule 15(c)(1) of the Federal Rules of Civil Procedure provides:
An amendment to a pleading relates back to the date of the original pleading when:
 (A) the law that provides the applicable statute of limitations allows relation back;
 (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
 (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
    (i) received such notice of the action that it will not be prejudiced in defending

A. <u>Plaintiffs' New Claims against the Original Defendants</u>[11]

Plaintiffs' Amended Complaint adds ADA Title II and Rehabilitation Act claims against the Original Defendants.  Because these claims do not add new parties, this amendment is governed by Rule 15(c)(1)(B), which requires that, to relate back, the new claims asserted in the Amended Complaint must arise out of the same conduct, transaction, or occurrence described in the original pleading.  <u>See</u> Fed R. Civ. P. 15(c)(1)(B).  Here, the Amended Complaint advances a new legal theory (discrimination in violation of the ADA Title II and the Rehabilitation Act) premised upon the same set of facts alleged in the Original Complaint (failure to treat appropriately the Decedent's mental health issues during his incarceration).[12]  <u>See Tiller v. Atlantic Coast Line R. Co.</u>, 323 U.S. 574, 581 (1945) (holding that an amendment that sets forth a claim arising under a different statute based on the same underlying facts relates back under Rule 15(c)); <u>see also</u> Wright, Miller & Kane, <u>Federal Practice and Procedure: Civil 2d</u> § 1497, pp. 94-95 (1990).  Plaintiffs' ADA Title II and Rehabilitation Act claims against Defendants Goord, Hogan, and Sawyer relate back under Rule 15(c) and are not time-barred.

B. <u>Plaintiffs' Claims against the Entity Defendants</u>

An amendment adding new defendants relates back to the date of the original complaint when (1) the claim arises out of the same conduct originally pleaded; (2) the party to be

_____

on the merits; and
(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
Fed. R. Civ. P. 15(c)(1).

[11]   The Amended Complaint asserts new ADA Title II and Rehabilitation Act claims against Defendants Goord, Hogan, and Sawyer.  Plaintiffs do not bring ADA Title II or Rehabilitation Act claims against Defendant Rizzo.

[12]   The Original Complaint alleged that state officials "designed and implemented a mental health delivery system that is and was wholly inadequate to address the treatment needs of those seriously mentally ill confined in DOCS' custody and failed to implement a suicide prevention program." (Compl. ¶ III-C.)

added by amendment, within 120 days of the original filing date, has received notice of the action

such that the party will not be prejudiced in defending the case on the merits; and (3) the party to be

added by amendment "knew or should have known that, but for a mistake concerning the identity of

the proper party, the action would have been brought against the party."  Soto v. Brooklyn Corr.

Facility, 80 F.3d 34, 35 (2d Cir. 1996); see also Fed. R. Civ. P. 15(c)(1)(C).

   The claim against the Entity Defendants arises out of the same conduct referred to in

the Original Complaint: Decedent's mental health treatment while incarcerated in DOCS.  The

allegations in the Amended Complaint "amplify the facts alleged in the original pleading or set forth

those facts with greater specificity" and thus arise out of the same conduct or occurrence as the claim

originally pleaded.  In re Chaus Sec. Litig., 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992).   Therefore,

the Court concludes that the first condition of Rule 15(c)(1)(B) has been met.

   To satisfy the Rule's notice requirement, Plaintiffs need not show actual notice, as

constructive notice may be imputed to a new defendant state entity through its attorney "when the

attorney also represented the officials originally sued, so long as there is some showing that the

attorneys knew that the additional defendants would be added to the existing suit."  Muhammad v.

Pico, 02 Civ. 1052, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003) (internal quotation marks,

brackets, and citations omitted).   "The constructive notice doctrine is based on the theory that the

newly added defendant is not prejudiced by the lack of notice if his attorney has already begun

preparing a defense for the named defendant during the limitations period."  Velez v. Fogarty, No. 06

Civ. 13186, 2008 WL 5062601, *5 (S.D.N.Y. Nov. 20, 2008).  The Original Defendants are state

employees and, as such, are entitled to representation by the Attorney General of the State of New

York, which also represents the Entity Defendants.  See N.Y. Pub. Off. Law § 17(2)(a) (McKinney's

2008) (providing that New York State has a statutory obligation to represent its employees in civil

suits arising out of events that occurred within the scope of their employment).  The Attorney

General, as a government official, is "charged with knowing the law."  Soto, 80 F.3d at 36.  Since

New York State, through its agencies, DOCS and OMH, is charged with the delivery of mental

health care to mentally ill prisoners, see N.Y. Correct. Law § 401 (McKinney's 2003) ("[t]he

commissioner [of DOCS], in cooperation with the commissioner of [OMH], shall establish

programs in such correctional facilities as he may deem appropriate for the treatment of mentally ill

inmates confined in state correctional facilities who are in need of psychiatric services but who do

not require hospitalization"), and CNYPC, under the auspices of OMH, provides mental health

services for DOCS, see N.Y. Mental Hyg. Law § 7.17 (McKinney's 2006) (CNYPC "shall be in the

[OMH] . . . for the care, treatment, and rehabilitation of the mentally disabled"); N.Y. Correct. Law §

402(9) (McKinney's 2003) (providing that when two doctors certify that a prisoner is mentally ill and

is a danger to himself or others, he should be transferred to CNYPC), the Court concludes that the

Original Complaint's references to the inadequacy of the mental health program for inmates was

sufficient to put the Attorney General on notice to prepare a defense for the Entity Defendants.

Constructive notice, therefore, may be imputed to the State of New York and its agencies, DOCS,

OMH, and CNYPC.  Cf. Muhammad, 2003 WL 21792158, at 20* (holding that a newly-added

DOCS employee, represented by the Attorney General, was on constructive notice, since the Attorney

General represented the original defendants, and the allegations in the original complaint, including

claims of wrongdoing by an unnamed employee, were sufficient for the Attorney General to prepare a

defense for the new defendant).

　　　　　With respect to the mistake element, "where a plaintiff can show that he

misapprehended the identity of the person he wished to sue (a factual mistake), or failed to

understand the legal requirements of his claim (a legal mistake), then the claim satisfies the 'mistake'

requirement" of Rule 15(c).  Dupree v. Pough, 454 F. Supp. 2d 166, 174 (S.D.N.Y. 2006) (citing

Soto, 80 F.3d at 35).  In Soto, a *pro se* plaintiff filed a Section 1983 action that named only a municipal correctional facility as a defendant.  The plaintiff later sought to amend his complaint to add individual correctional officers.  The Soto Court found that because the complaint was legally insufficient without the individual defendants, plaintiff's failure to name them "cannot be considered a matter of choice[,]" but was instead a "mistake as to the technicalities of constitutional tort law." Id. at 37.

Plaintiffs' Original Complaint raised Section 1983 claims against only individuals. As previously discussed, Plaintiffs' ADA Title II and Rehabilitation Act claims arise out of the same set of facts as those alleged in the Original Complaint and were implicated in that pleading.  "Since government officials are charged with knowing the law," Soto, 80 F.3d at 36, the Original Complaint's references to the inadequacy of the mental health system for prisoners were sufficient to put the Attorney General on constructive notice that such claims were implicated in the original pleading and that ADA Title II and Rehabilitation Act claims would be legally insufficient if asserted only against individual rather than entity defendants.  See Hudson v. Lockhart, 554 F. Supp. 2d 494, 497 (S.D.N.Y. 2008) (ADA Title II); Darcy v. Lippman, No. 03 Civ. 6898, 2008 WL 629999, at *4 (S.D.N.Y. Mar. 10, 2008) (Rehabilitation Act).  The Attorney General should have known that, but for Plaintiffs' lack of legal knowledge, they would have raised ADA Title II and Rehabilitation Act claims at the outset against the State and its agencies.   See Taliferro v. Costello, 467 F. Supp. 33, 36 (E.D. Pa. 1979) ("Plaintiffs' failure to sue the City reflected a narrow view of the causes of action set forth in their *pro se* complaint which would probably not have been taken had a lawyer familiar with the legal terrain drawn their first pleading.").  Therefore, Plaintiffs' failure to name the Entity Defendants constitutes a mistake of law, and their ADA Title II and Rehabilitation Act claims against the Entity Defendants are not time-barred.

C.   Claims against the Newly-Added Individual Defendants

(1)  *Relation Back under Rule 15(c)(1)(C)*

Plaintiffs' naming of "John Doe" and "James Doe" as defendants in their initial filing did not toll the statute of limitations.  See Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993) ("'John Doe' pleadings cannot be used to circumvent statutes of limitations . . . Such an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.").  Accordingly, the Court must determine whether the claims against the Newly-Added Individual Defendants relate back to the Original Complaint.

a. *Claims against Defendant Mazzuca*

The Amended Complaint substitutes former Fishkill Superintendent Mazzuca for current Superintendent Connelly, and asserts only ADA Title II and Rehabilitation Act Claims against Defendant Mazzuca.  It is unnecessary to analyze whether these claims relate back to the original filing, however, because Plaintiffs' only claims against Defendant Mazzuca are brought under ADA Title II and the Rehabilitation Act, neither of which allows individuals to be sued in damage suits for alleged violations of those statutes.[14]  See Hudson, 554 F. Supp. 2d at 497 (individual defendants may not be held liable for damages, in either a personal capacity or an official capacity, for alleged violations of ADA Title II); Darcy, 2008 WL 629999, at *4 (same under Rehabilitation Act).  Therefore, Plaintiffs' ADA Title II  and Rehabilitation Act claims against Defendant Mazzuca fail insofar as they seek to recover damages for alleged violations of those statutes.  See Ford v. Conway, No. 03 Civ. 0927, 2004 WL 1071171, at *3 (W.D.N.Y. Mar.

---

[14]     The Court is mindful of the Second Circuit's recent decision in Harris v. Mills, ---F.3d ----, 2009 WL 1956176, at *6 (2d Cir. 2009), which held that individuals may be sued for prospective injunctive relief under the ADA Title II and Rehabilitation Act.  In light of Plaintiffs' abandonment of their claim for injunctive relief, (Pl.'s Opp. 18), Harris is inapposite here.

16, 2004) (indicating the proper defendant was DOCS, not prison employees in their official and

individual capacities).

b. *Claims against the Remaining Individual Defendants*

Plaintiffs' claims against the remaining Newly-Added Individual Defendants must

be dismissed because the failure to include them in the initial pleading cannot constitute a mistake

for the purposes of Rule 15(c). A plaintiff commits a mistake of fact "when the change is the result

of an error, such as misnomer or misidentification concerning the identity of the defendants not

originally named." Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469 (2d Cir. 1996),

modified and aff'd, 74 F.3d 1366 (2d Cir. 1996). Mere lack of knowledge as to the identity of the

proper defendants is insufficient to establish a factual mistake for relation back purposes. See

Malesko v. Corr. Servs. Corp., 229 F.3d 374, 383 (2d Cir. 2000) (a plaintiff does not commit a

mistake of fact "if [he] knew that he was required to name an individual as a defendant but did not

do so because he did not know the individual's identity") (citing Barrow, 66 F.3d at 470), rev'd on

other grounds, 534 U.S. 61 (2001); see also Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999)

(holding that this standard applies even when suit is brought by a *pro se* plaintiff). Where a

plaintiff tries diligently during the limitations period to ascertain the identities of the intended

defendants, failure to ascertain the correct names within the period, combined with some "John

Doe" or other generic identification in the pleading, may suffice to establish a factual "mistake"

supporting relation back. See Byrd v. Abate, 964 F. Supp. 140, 145 (S.D.N.Y. 1997). Where, as

here, there is no indication of any effort to identify the proper defendants before the expiration of

the limitations period, relation back is not appropriate. Plaintiffs did not bring suit until the final

day of the limitations period and do not claim that they attempted to discover the identities of the

Newly-Added Individual Defendants within the statutory period, nor do they assert that information

concerning the identities of these individuals was uniquely in the possession of the Defendants or

that the Defendants failed to cooperate with Plaintiffs' attempts to obtain this information.

Accordingly, Plaintiffs' failure to include the Newly-Added Individual Defendants in the Original

Complaint was not an excusable mistake of fact.

Nor does Plaintiffs' omission of the Newly-Added Individual Defendants from their

Original Complaint qualify as a legal mistake under Soto.  Unlike the pleading in Soto, Plaintiffs'

Original Complaint was not legally insufficient because it had named improper defendants, but

rather because Plaintiffs "fail[ed] to provide any facts to support [their] claim," (Jan. 14 Order, 3-

4), and "fail[ed] to specifically allege how the named defendants contributed to [Decedent's]

treatment" (Jan. 14 Order, 2).  Accordingly, Plaintiffs' claims against the Newly-Added Individual

Defendants do not meet the relation-back criteria of Rule 15(c)(1)(C).  The Court therefore

examines whether the new claims meet the relation-back criterion of Rule 15(c)(1)(A) – whether

the relevant New York law provides for relation back.  See Fed. R. Civ. P. 15(c)(1)(A); Lieber v.

Village of Spring Valley, 40 F. Supp. 2d 525, 532 (S.D.N.Y. 1999) (noting that, under Rule

15(c)(1)(A), if a state's rules regarding relation back are less rigorous than the federal rules, state

law applies).

(2)  *Relation Back under New York Law*

New York courts have held that a claim against newly-added defendants relates

back to the initial filing when: "(1) both claims arose out of same conduct, transaction or

occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of

that relationship can be charged with such notice of the institution of the action that he will not be

prejudiced in maintaining his defense on the merits and (3) the new party knew or should have

known that, but for a mistake by plaintiff as to the identity of the proper parties, the action would

have been brought against him as well." <u>Amaya v. Garden City Irrigation, Inc.</u>, No. 03 Civ. 2814, 2009 WL 2030695, at *4-5 (E.D.N.Y. Jul. 13, 2009) (citing <u>Buran v. Coupal</u>, 87 N.Y.2d 173, 178 (1995)) (internal quotation marks and brackets omitted); <u>see</u> N.Y. C.P.L.R. § 203(b)(1) (McKinney's 2003).   The second requirement, unity of interest, is established when "the interest of the parties in the subject-matter is such that they will stand or fall together and that judgment against one will similarly affect the other." <u>Mongardi v. BJ's Wholesale Club</u>, 45 A.D. 3d 1149, 1150-51 (3d Dep't 2007) (internal quotation marks, brackets, and citations omitted).

There is no such unity of interest between the Original Defendants and the Newly-Added Individual Defendants in this case.  As noted above, the Original Complaint names only individuals.  Since liability for damages in a Section 1983 action cannot be predicated on the doctrine of *respondeat superior*, <u>see</u> <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978), each individual defendant's liability will be determined with regard to that defendant's particular acts or omissions.  Therefore, the claims against the various Defendants would not necessarily stand or fall together, the unity of interest requirement cannot be met, and relation back is unavailable to Plaintiffs under New York law with respect to the Newly-Added Individual Defendants.

(3) *Equitable Tolling*

Plaintiffs contend that Chief Judge Wood's January 14 Order tolled the statute of limitations until March 15, 2008.  However, the January 14 Order simply provides that "all *further* proceedings shall be stayed for sixty (60) days," (Jan. 14 Order, 5) (emphasis added), and advises Plaintiffs that an "amend[ed] complaint substituting names of defendant officers for John Doe defendants does not relate back to the filing of the original complaint" (<u>id</u>. at 2, n.1).  The January 14 Order does not explicitly toll the statute of limitations, nor does it reveal any intent to do so.

Plaintiffs contend in the alternative that the statute of limitations should be deemed equitably tolled because it would be unfair to penalize them for relying on Judge Wood's Order.  The record in this case, however, provides no basis for application of the doctrine of equitable tolling based on any reliance on the January 14 Order.  The statute of limitations expired on the day that Plaintiffs filed their Original Complaint.  Judge Wood's Order was issued some three months after the limitations period had expired.  There is thus no factual basis upon which Plaintiffs can claim to have relied on the January 14 Order to extend the statute of limitations while they sought to add new defendants or new claims, and Plaintiffs' tolling argument must fail.

In sum, Plaintiffs' claims are barred as untimely with respect to Defendants Burge, Colella, Hermann, Miller, Dr. Langbart, Henderson, Dr. Kami, Dr. Klein, Vito, Churns, Croce, Roberts, Correctional Officer Miller, Belanger, and Muetzel.

The Court now turns to Defendants' arguments regarding the sufficiency of Plaintiffs' pleading as to their timely claims against Defendants Goord, Hogan, Sawyer, Rizzo, DOCS, OMH, CNYPC, and the State of New York.

IV.  Plaintiffs' Claim for Deprivations of Rights Secured by the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983

Plaintiffs allege that Defendants deprived Decedent of his Eighth Amendment right to be free from cruel and unusual punishment by demonstrating deliberate indifference to his medical needs.  "[T]he doctrine of *respondeat superior* may not be used to impose liability under section 1983."  Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).  Accordingly, this claim fails against Defendants Goord, Hogan, and Sawyer because Plaintiffs allege no personal involvement of these individuals in the constitutional violation.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in the alleged constitutional deprivation is a

prerequisite to an award of damages under § 1983").  Defendant Rizzo is the only remaining

individual whom Plaintiffs allege played a personal role in the alleged deliberate indifference to

Decedent's medical needs.  For the following reasons, Plaintiffs have failed to state a claim for

deliberate indifference with respect to Rizzo.

   The Eighth Amendment's prohibition on the infliction of cruel and unusual

punishment "includes punishments that involve the unnecessary and wanton infliction of pain."

Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations

omitted).  Deliberate indifference to a prisoner's serious medical needs constitutes unnecessary and

wanton infliction of cruel and unusual punishment prohibited by the Eighth Amendment and is a

basis for Section 1983 recovery.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  The

deliberate indifference standard is a two-pronged test.  "First, the alleged deprivation must be, in

objective terms, sufficiently serious."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)

(internal quotation marks and citations omitted).  "Second, the charged official must act with a

sufficiently culpable state of mind."  Id.  A charged official does not act with a sufficiently culpable

state of mind unless the official "knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan,

511 U.S. 825, 837 (1994).

   A medical need is "sufficiently serious" when it presents "a condition of urgency,

one that may produce death, degeneration, or extreme pain."  Hathaway v. Coughlin, 99 F.3d 550,

553 (2d Cir. 1996).  The Second Circuit has identified several non-exclusive factors relevant to the

"sufficiently serious" inquiry: "[t]he existence of an injury that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance, 143 F.3d at 702 (citation omitted). A medical need is also considered sufficiently serious where the denial of treatment causes a permanent loss or life-long handicap. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

Plaintiffs' pleading generally frames the objective prong. Plaintiffs allege that the denial of level-one psychiatric treatment and the deprivation of Decedent's psychotropic medication caused the Decedent to suffer from recurrent hallucinations, insomnia, paranoia and poor impulse control (Am. Compl. ¶¶ 47-48, 70-75, 76-78, 81-82, 86), which adequately substantiates, at the pleading stage, that Decedent's condition substantially affected his everyday activities and caused him substantial mental anguish. See McCoy v. Goord, 255 F. Supp. 2d 233, 259 (S.D.N.Y. 2003) ("[d]enial of psychiatric or mental health care, if sufficiently serious, may constitute a violation of the Eighth Amendment.") (citation omitted). However, Plaintiffs' allegations with respect to Defendant Rizzo are insufficient to allege plausibly that Rizzo participated in the denial of services appropriate to Decedent's condition and that his actions met the subjective prong of the standard.

Plaintiffs allege that Rizzo was a psychologist at the Fishkill facility who treated Decedent during Decedent's first assignment to Fishkill and who concurred in the medical doctor's finding that Decedent should have been classified as level one. Rizzo is also alleged to have made specific recommendations regarding the services that Decedent required and to have recommended that Decedent be "commit[ted] to CNYPC." (Am. Compl. ¶¶ 50, 53.) Rizzo is not alleged to have been involved in the decision to assign Decedent to Auburn in June 2003, the decision to transfer Decedent back to Fishkill in July 2004, or the denial of anti-psychotic medication in connection with the transfer back to Fishkill. Plaintiffs merely allege, without specifying what, if any,

authority or responsibility Rizzo allegedly had in connection with that transfer, that Rizzo and two other defendants "showed conscious and deliberate indifference to [Decedent's] psychological disabilities when they accepted, acquiesced, and failed to prevent his designation to Fishkill Correctional Center, knowing it to be an unsuitable facility ill-equipped to meet [Decedent's] psychological needs," and that although they knew that Fishkill was not a suitable placement they "with reckless disregard failed to assure his placement at a suitable facility."  (Am. Compl. ¶¶ 79, 80.)  Plaintiffs allege generally that Decedent's "disciplinary problems [at Fishkill] were a direct result of Defendants' failure to adequately treat [Decedent's] psychological disabilities" (Am. Compl. ¶87), but specifically allege that Rizzo changed Decedent's classification back to level one after noting that Decedent had been placed in disciplinary confinement, observing that Decedent needed "psychiatric treatment for major mental discord in facility which offers . . . residential crisis treatment and medication monitoring by OMH psychiatric nursing staff" and noting that Decedent "should not be changed back to 2 when he compensates and improves," (Am. Compl. ¶ 87).

The state of mind required to satisfy the subjective prong of the deliberate indifference standard is "more than negligence, but less than conduct undertaken for the very purpose of causing harm." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "Mere negligence in the treatment of an individual's physical condition, or claims based on differences of opinions over matters of medical judgment, fail to rise to the level of a § 1983 violation." Sloan v. Zelker, 362 F. Supp. 83, 84 (S.D.N.Y. 1973). "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety.'" Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.1996)(quoting Farmer, 511 U.S. at 837.) The requisite state of mind is one "equivalent to the familiar standard of 'recklessness' as used in criminal law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).

Plaintiffs' conclusory allegation that Defendant Rizzo "showed conscious and deliberate indifference to [Decedent's] psychological disabilities when [he] accepted, acquiesced, and failed to prevent his designation [from Auburn back] to Fishkill . . . knowing it to be an unsuitable facility ill-equipped to meet [Decedent's] needs" (Am. Compl. ¶ 79), is insufficient to demonstrate that Rizzo was anything more than an observer or bystander with respect to the transfer back to Fishkill, showing neither that he had any authority to prevent or reject the transfer nor that anything Rizzo did or failed to do in connection with the transfer was even negligent.  See Boomer v. Lanigan, No. 00 Civ. 5540, 2001 WL 1644675, at *3 (S.D.N.Y. Dec. 17, 2001) (noting that mere negligence, medical malpractice, or differences of opinion regarding medical treatment do not rise to the level of deliberate indifference).  Moreover, Plaintiffs' specific allegations regarding Rizzo's conduct toward Decedent indicate that Rizzo was far from indifferent to Decedent's condition and treatment needs.  According to Plaintiffs, Rizzo recommended level-one classifications and settings, and specified forms of treatment and settings he believed appropriate to Decedent's needs.  Plaintiffs' allegations with respect to their Eighth Amendment claim against Rizzo are therefore insufficient to meet the requirement of pleading a reckless state of mind, and Plaintiffs' Section 1983 claim against Defendant Rizzo will accordingly be dismissed.

V.   ADA Title II and Rehabilitation Act Claims

Plaintiffs assert their remaining claims under Title II and the Rehabilitation Act. Defendants move for dismissal of these claims as to the Individual Defendants, contending that individuals may not be held liable, in either their individual or official capacities, under ADA Title

II or the Rehabilitation Act.[10]  Defendants further contend that Plaintiffs fail to state a claim for

relief under ADA Title II or the Rehabilitation Act against the Entity Defendants.

   Although a suit against a state or one of its agencies is generally proscribed by the

Eleventh Amendment, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02

(1984), Congress may abrogate a state's Eleventh Amendment immunity through legislation

pursuant to its power under Section 5 of the Fourteenth Amendment, see Tennessee v. Lane, 541

U.S. 509, 518 (2004).  "[I]nsofar as Title II creates a private cause of action for damages against the

State for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state

sovereign immunity."  United States v. Georgia, 546 U.S. 151, 159 (2006).  Similarly, suits against

the state and agencies are permissible under the Rehabilitation Act where the state has waived its

sovereign immunity by accepting federal funds.  See Garcia v. S.U.N.Y. Health Sciences Ctr., 280

F.3d 98, 113 (2d Cir. 2001) (holding that Congress may require a state to agree to waive its

sovereign immunity as a condition of accepting federal funds).

   Title II of the ADA "proscribes discrimination against the disabled in access to

public services."  Harris v. Mills, --- F.3d ----, 2009 WL 1956176, at *6 (2d Cir. 2009) (citation

omitted).  ADA Title II provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefit of services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.

§ 12132 (West 2008).  "To assure that those requirements are met, 'reasonable accommodation'

may have to be provided to the qualified individual."  Harris, 2009 WL 1956176, at *6 (citing

---

[10]  Plaintiffs' Amended Complaint names DOCS, OHM, CNYPC, and the State of New York in the caption but contains no allegations against them in the body of the complaint.  The Court assumes for purposes of this analysis that Plaintiffs intend to assert their ADA Title II and Rehabilitation Act claims against the Individual Defendants' Entity Defendant employers as well as against the Individual Defendants.

Henrietta D. v. Bloomberg, 331 F.3d 261, 273-74 (2d Cir. 2003)).  Similarly, Section 504 of the

Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a

disability . . . shall, solely by reason of his or her disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance or under any program or activity conducted by any Executive agency."

29 U.S.C. § 794(a) (West 2008).   To state a claim under ADA Title II, Plaintiffs must allege that:

(1) the Decedent was a "qualified individual with a disability; (2) he or she [was] excluded from

participation in, or [was] denied the benefits of some service, program, or activity by reason of his

or her disability; and (3) the facility that provides the service, program or activity is a public entity."

Giraldi v. Bd. of Parole, No. 04 Civ. 877, 2008 WL 907321, at *5 (N.D.N.Y. Mar. 31, 2008)

(internal quotation marks, brackets, and citations omitted).  Under the Rehabilitation Act, a plaintiff

must allege facts showing the same three elements, see Harris, 2009 WL 1956176, at *6 (citation

omitted), in addition to pleading that the entity in question receives federal funding, see Darcy,

2008 WL 629999, at *5.

       The Defendants do not dispute that the Amended Complaint adequately alleges that

Decedent was a qualified individual with a disability and that the entities in question were public

entities.  Rather, Defendants contend that Plaintiffs fail to adequately state how the Decedent was

excluded from a program, benefit, service, or activity by reason of his disability.  The Amended

Complaint alleges broadly that several of the Individual Defendants "discriminated against

[Decedent] on the basis of his disability and/or failed to accommodate his disability" (Am. Comp. ¶¶

99-100), but does not allege how any particular Entity Defendant engaged in unlawful

discriminatory conduct or failed to reasonably accommodate Decedent.  Additionally, the claim is

conclusory as it simply restates the "exclusion by reason of disability" requirement without alleging

any facts to substantiate it.  See Iqbal, 129 S. Ct. at 1949 (to survive dismissal, "[a] pleading that offers . . . a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks and citation omitted).  The Amended Complaint also fails to allege that the Entity Defendants received federal funding.  Therefore, Plaintiffs fail to state a claim under either ADA Title II or the Rehabilitation Act and these claims will be dismissed.  However, Plaintiffs will be granted leave to replead these claims against DOCS, OHM, CNYPC, and the State of New York.

CONCLUSION

For the foregoing reasons, all Section 1983 claims against the State of New York, DOCS, OMH, CNYPC, and/or state officials in their official capacity are dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  All claims against Defendants Burge, Phillips, Colella, Hermann, Miller, Dr. Langbart, Henderson, Dr. Kami, Dr. Klein, Vito, Churns, Croce, Roberts, Correctional Officer Miller, Belanger, and Muetzel are dismissed with prejudice pursuant to Rule 12(b)(6) as untimely.  All claims against Defendants Phillips, Fishkill Nurse Homell or Howell, Fishkill Nurse 407, Furrorn, Nelson, Lopiccolo, and Thomas are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for failure to make timely service.  The Section 1983 claim against Defendant Rizzo and the ADA Title II and Rehabilitation Act claims against Defendant Mazzuca are dismissed with prejudice pursuant to Rule 12(b)(6).  Plaintiffs' ADA Title II and Rehabilitation Act claims against DOCS, OHM, CNYPC, and the State of New York are dismissed with leave to replead.  Any Second Amended Complaint repleading claims against the Entity Defendants must be filed by **September 4, 2009**.  Failure to file such a timely amended pleading will result in the dismissal of the claims against the Entity Defendant with

prejudice, without further advance notice to Plaintiffs. This Order resolves docket entry no. 18.

SO ORDERED.

Dated: New York, New York
August 14, 2009

LAURA TAYLOR SWAIN
United States District Judge