UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOY MACCHARULO et al.,

        Plaintiffs,

  -v-                                    No. 08 Civ. 301 (LTS)

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES et al.,

        Defendants.
--------------------------------------------------------x

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

MEMORANDUM OPINION AND ORDER

        This action arises out of the alleged denial of access to a particular mental health services program to Plaintiffs' decedent Frank Kucharczyk ("Decedent"), a mentally ill person who was at all relevant times incarcerated in the New York State prison system. Plaintiffs Joy Maccharulo and Dolores Kucharczyk ("Plaintiffs"), Co-Administrators of Decedent's estate, assert claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"). In their Second Amended Complaint ("SAC"), Plaintiffs name as defendants the New York State Department of Correctional Services ("DOCS"), the New York State Office of Mental Health ("OMH"), and the Central New York Psychiatric Center ("CNYPC") (collectively, "Defendants"). The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1331. Defendants have moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered thoroughly the parties' submissions. For the following reasons, Defendants' motion is granted in its entirety.

<u>BACKGROUND</u>

Plaintiffs' Second Amended Complaint asserts claims under ADA Title II and Section 504 of the Rehabilitation Act against DOCS, OMH, and CNYPC.  (SAC ¶¶ 8-11.)  The following facts are alleged in the SAC and are taken as true for purposes of this motion practice.  See <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007).  Decedent, at the time of his death in 2004, was a 44-year-old man who suffered from paranoid schizophrenia.  Symptoms of paranoid schizophrenia include a limited ability to communicate, control impulses, and interact appropriately with others.  (SAC ¶¶ 14-15.)

On October 31, 2002, Decedent was sentenced to a term of seven years of incarceration after pleading guilty to attempted robbery and assault.  (SAC ¶ 16.)  Prior to being assigned to a prison facility, Decedent underwent a mental health screening conducted by CNYPC for an OMH classification and service level designation, which would be relied upon to place him appropriately in the correctional system.  The OMH classification system ranks each subject on a scale from level one to level five, with level one subjects requiring and receiving the most intensive mental health treatment.  (SAC ¶¶ 17, 19.)

CNYPC concluded that Decedent required psychiatric treatment for a major mental health disorder and classified him as OMH level two.  (SAC ¶¶ 17, 19.)  Accordingly, he was assigned to Fishkill Correctional Facility ("Fishkill"), a level two facility, on or about January 26, 2003.  (SAC ¶ 20, 25.)  While he was incarcerated at Fishkill, Decedent's mental health deteriorated significantly.  Specifically, Decedent experienced an increased number of auditory hallucinations and severe paranoia.  (SAC ¶ 25.)  Additionally, Decedent demonstrated poor judgment and impulse control as a result of his disability and was disciplined for that behavior.  For example, on one occasion, Decedent failed to follow an order to return to his desk while

participating in Fishkill's pre-GED program. On another occasion, Decedent cursed at a correctional officer. (SAC ¶ 27.) Pursuant to the facility's regular disciplinary measures, Decedent was removed from his pre-GED program and was sent to the Special Housing Unit ("SHU"). (SAC ¶ 27.) Placement in the SHU exacerbated Decedent's mental health problems. (SAC ¶ 23.) In June 2003, the Fishkill staff reclassified Decedent as level one and, accordingly, he was transferred later that month to Auburn Correctional Facility ("Auburn"), a level one facility. While receiving level one treatment at Auburn, Decedent's mental health improved significantly. He was able to attain his GED and to work. (SAC ¶¶ 25, 41-42.)

In July 2004, prison employees initiated a request to transfer Decedent back to a level two facility. Decedent wrote a letter requesting that he not be transferred. (SAC ¶¶ 43-44.) However, after spending approximately thirteen months at Auburn, on August 4, 2004, Decedent was transferred back to Fishkill. (SAC ¶ 49.) At Fishkill, Decedent's mental health deteriorated again. He experienced increased paranoia, auditory hallucinations, insomnia, and restlessness. Decedent again began demonstrating poor judgment and impulse control, which led to disciplinary problems. He was punished for his behavior by being placed in the SHU. (SAC ¶ 51-52.) On September 23, 2004, an employee of OMH noted that Decedent's classification would be changed to level one and that he should not be transferred back to a level two facility when his condition improved. (SAC ¶ 35.) Three weeks later, Decedent was transferred to a level one facility. On the day of his transfer, Decedent died of a prescription drug overdose. (SAC ¶ 35-36.)

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.

The ADA is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1) (West 2005); see Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (West 2005).  Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C.A. § 794(a) (West 2008).  The purpose of both statutes is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998).  Neither the ADA nor the Rehabilitation Act, however, applies to claims regarding the quality of mental health services, Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003), nor do the statutes "create a remedy for medical malpractice," Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (applying the ADA).

Courts generally apply the same legal standards when adjudicating claims arising under ADA Title II and ones arising under the Rehabilitation Act. Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009). Although there are some differences between the statutes, "unless one of those subtle distinctions is pertinent to a particular case, [the Court] treat[s] claims under the two statutes identically." Henrietta D., 331 F.3d at 272. To state a claim under ADA Title II, plaintiffs must allege that: "(1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Id. (quoting 42 U.S.C.A § 12132); see also Harris, 572 F.3d at 73-74. In addition, to state a claim under the Rehabilitation Act, plaintiffs must demonstrate that the entity defendant receives federal funding. Id. Here, there is no dispute that Plaintiffs have adequately alleged that Decedent falls under the protection of ADA Title II and the Rehabilitation Act (SAC ¶¶ 14) and that Defendants are subject to the provisions of the ADA and the Rehabilitation Act (SAC ¶¶ 38-39).

Under the ADA, public entities are obligated to make reasonable accommodations for disabled individuals to ensure that they have meaningful access to public benefits. See Henrietta D., 331 F.3d at 273. Similarly, the Rehabilitation Act requires that qualified disabled individuals "receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." Powell v. National Bd. of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004). The purpose of these requirements is to ensure that services provided to non-disabled individuals are not denied to disabled individuals because of their disability. Pfrommer, 148 F.3d at 83. Therefore, when there is no allegation of "disparate treatment," Atkins, 251 F. Supp. 2d at 1232, between disabled and non-disabled individuals, the

plaintiff has not stated a claim under the ADA or the Rehabilitation Act.  Id.; see Pfrommer, 148 F.3d at 83.  Moreover, neither the ADA nor the Rehabilitation Act requires that all disabled individuals who are receiving public services be provided with identical benefits.  Flight v. Gloeckler, 68 F.3d 61, 63 (2d Cir. 1995).  Thus, a claim that challenges the adequacy, Pfrommer, 148 F.3d at 82, or the substance, id. at 84, of services that are being provided to a disabled individual is not a valid claim under either the ADA or the Rehabilitation Act.  See Atkins, 251 F. Supp. 2d at 1232.

        Plaintiffs' Amended Complaint is one that challenges the adequacy of services rather than the denial to disabled persons of access to programs or services provided to non-disabled individuals.  Specifically, Plaintiffs argue that Decedent was denied the opportunity to receive level one services on account of his schizophrenia.  Plaintiffs allege that the specific nature of schizophrenia is such that, when treated properly (as it was when Decedent was incarcerated at Auburn and receiving level one services), its symptoms recede.  Because Decedent did not manifest the symptoms of his disability while at Auburn, Defendants transferred him back to a level two facility and removed his access to level one services – despite the fact that Plaintiff continued to require those services.  Plaintiffs argue that Defendants denied Decedent access to level one services because of the particular nature of his disability, that is, because he suffered from a disability whose symptoms would lie dormant while he was in receipt of proper care (SAC ¶¶ 3-4), and that Defendants' decision to transfer Decedent out of the level one program despite his latent schizophrenia violated the ADA and the Rehabilitation Act.

        Plaintiffs also allege that, while Decedent was at Fishkill, Defendants disciplined Decedent by placing him in the SHU.  Plaintiffs allege that Defendants should have recognized that Decedent's misbehavior owed to the inadequacy of the level two services and they should have

responded by providing him with level one services rather than by imposing disciplinary measures. (SAC ¶ 4.) Plaintiffs do not allege, however, that Decedent was denied the level two services that he otherwise received at Fishkill while he was in the SHU.

    Defendants contend that Plaintiffs have not stated a claim that Decedent was excluded from participating in a prison program, benefit, service, or activity by reason of his disability. Rather, Plaintiffs' allegations regarding Decedent's placement in a level two facility and his disciplinary relegation to the SHU challenge the adequacy of the mental health treatment that Decedent received but do not allege the type of denial of services that is required to state a claim under the ADA or the Rehabilitation Act.

    ADA Title II and the Rehabilitation Act require that public entities and entities that receive federal funding make "reasonable accommodations" for disabled individuals to enable them to participate in programs, and secure services, offered to the non-disabled population. Powell, 364 F.3d at 84-85. Read in the light most favorable to Plaintiffs, the Second Amended Complaint pleads that Decedent was at all relevant times provided with mental health services in an effort to accommodate his particular mental health disability and that he was specifically provided with level one services at various times throughout his incarceration. Plaintiffs' complaint regarding the failure to provide consistent access to the level one treatment program is, on its face, one having to do with a program provided to persons with disabilities, rather than one provided to non-disabled persons. Plaintiffs' complaint thus is a challenge to the adequacy and the nature of the mental health services Decedent was receiving rather than a claim that Decedent was wrongfully denied a public service. A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or the Rehabilitation Act. See Pfrommer, 148 F.3d at 82; Atkins, 251 F. Supp. 2d at 1231.

Plaintiffs' argument that Defendants violated ADA Title II and the Rehabilitation Act by placing Decedent in the SHU rather than providing him with level one services when he manifested poor impulse control as a result of his disability also fails to state an actionable claim under the ADA or the Rehabilitation Act.  Plaintiffs do not plead facts demonstrating that Decedent was treated differently from non-disabled individuals exhibiting the same behavior.  Rather, their assertion is that Decedent could, with different and more intensive treatment for his particular disability, have been enabled to avoid the offending behavior.  Like that of the plaintiffs in Atkins v. County of Orange (discussed below), their complaint falls outside the purview of the ADA and the Rehabilitation Act.  251 F. Supp. 2d at 1232.

In Atkins v. County of Orange, mentally ill inmates asserted claims under ADA Title II and the Rehabilitation Act, alleging that the defendants discriminated against them by placing them in keeplock isolation as punishment for demonstrating symptoms of their mental illness.  Atkins, 251 F. Supp. 2d at 1231.  The Atkins Court held that the plaintiffs had not stated an actionable claim under either the ADA or the Rehabilitation Act because they were not alleging "that the mentally disabled are the only prisoners subjected to this procedure while the non-mentally disabled prisoners are excluded therefrom."  Id. at 1232.  Rather, prison procedures mandated that any inmate who "presents risk of danger to self or others" would be placed in keeplock isolation.  Id.  Therefore the placement of individuals in keeplock isolation applied equally to all inmates who demonstrated dangerous behavior and did not reflect discrimination against any particular group on account of their disability.  Id.  Similarly, Plaintiffs here do not allege that only mentally disabled prisoners are punished by being placed in the SHU, or that prisoners who are not disabled are provided with more appropriate alternatives to the SHU.  As in Atkins, there are no allegations in Plaintiffs' pleading to support any inference other than that

prisoners who misbehave similarly are disciplined similarly. Because the purpose of the ADA and the Rehabilitation Act is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied," Pfrommer, 148 F.3d at 82, a claim that does not allege such discriminatory treatment is not a viable claim under either statute. See Atkins, 251 F. Supp. 2d at 1232.

In sum, Plaintiffs' contentions that Decedent was inappropriately denied level one services while in a level two facility and while placed in the SHU are challenges to the adequacy of the mental health services that Decedent received. The unfortunate circumstances alleged here notwithstanding, neither the ADA nor the Rehabilitation Act provides a cause of action for challenges to the quality of mental health services provided or for allegations of negligent medical malpractice. Bryant, 84 F.3d at 249; Atkins, 251 F. Supp. 2d at 1232. Therefore, Plaintiffs have not stated a claim upon which relief can be granted under ADA Title II or the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, Plaintiffs' ADA Title II and Rehabilitation Act claims against DOCS, OMH, and CNYPC are dismissed. This Order resolves docket entry no. 29. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
July 21, 2010

LAURA TAYLOR SWAIN
United States District Judge